KENNETH J. TROIANO
ATTORNEY AT LAW
State Bar #134786
P.O. Box 33536
San Diego, CA 92163-3536
(858) 268-8600
Email: kjtroiano@mac.com

Attorney for Defendant
Luis Marin

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(Honorable Dana M. Sabraw)

| UNITED STATES OF AMERICA, | ) | Criminal Case: 21CR01021-DMS |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Date: February 18, 2022 |
| | ) | Time: 9:00 a.m. |
| LUIS MARIN (2), | ) | |
| Defendant. | ) | **Defendant's Sentencing Memorandum** |

The defendant, Luis Marin, submits the following Sentencing Memorandum.

A.   **Background and Characteristics of Luis Marin**

Luis Marin is a 26 year old Ecuadoran citizen, with no prior record, who was arrested at sea near the Galapagos Islands in the North Pacific Ocean.

He was born in Jaramijo, Manta, Ecuador. Both of his parents live close by in the town of Santa Elena. His highest education level is 6th grade. He has 4

1

sisters and one brother. He is the second oldest child in the family. Due to his family's poor financial situation he started working in the fishing business when he was 11 years old. He started out by helping his father in and around small fishing boats, doing mostly manual labor. As he learned more on the job, he started working with other fisherman in and around Manta. His longest fishing trip lasted about 30 days, when he went on a large fishing vessel. He never had formal training in fishing and/or how to run, fix/repair, or navigate a boat.

Mr. Marin has been in a two-year relationship with Heidi Monzarat Velez Pin (age 30), who resides in Manta. The defendant was unaware of her health issues but noted she suffers from a health problem he does not understand and for which she sometimes requires intravenous treatments. She was a homemaker, but began working at a factory packing fish, Ms. Velez has an eight-year-old daughter, Valentina, from an previous relationship. Luis has a three-year old daughter, Kiara, from a prior relationship.

Luis and his brother are the sole providers for the family due to chronic health problems suffered by his parents and a sister.

B.     **THE OFFENSE CONDUCT**

Luis had made his living as a fisherman, but due to the pandemic the fishing has not been good. A person who owns several pangas in his hometown of Manta, Ecuador, recruited him for a fishing job. He and his co-defendant, Luis Chavez, were taken from Manta to large vessel by a "water taxi." The trip to the bigger vessel took about 1-2 hours, and they arrived in the early evening hours—around 6:00-7:00 p.m. Marin said he met Luis Chavez for the first time when they boarded the water taxi and had known nothing about him before they met.

Once aboard the bigger vessel, both men were told to take a shower. They did not mingle with the crew, which he estimated to be around 40 individuals. They were kept separated from them. Once they were aboard the panga they were arrested in, the "Captain" of the ship told them they were gong to make a trip to smuggle an unknown quantity of "something illegal." He said he was not told specifically that it was drugs but he assumed that it was. They were told their destination was someplace near Mexico and the payment would be $30-35,000.

Although they were not expressly threatened, Luis felt pressured by the change in plans suddenly put upon them and his memory of a close friend who

had disappeared, never to be heard from again, about 8 years ago when he signed up to go on a 30-day fishing trip.

Chavez and Marin took turns in navigating with the GPS device they had been provided. The coordinates for the locations, where they were to stop and meet other smaller boats, had already been pre-loaded into the GPS device. They made 5 stops (mid-ocean) where they met other boats (similar to their panga), to take on gasoline, water, and food supplies.

During the mid-ocean stops, the smaller re-supply boats would already be there waiting. They used light signals (via flashlights) once they were within visual range. On their first such meeting, they had to wait almost a day for re-supply boat to arrive. Mr. Marin understood that the information regarding the meeting locations was coordinated between the captain and Chavez before they left the bigger ship.

Luis Marin he was responsible for refueling the panga's engines—that he undertook this job because he had done it before as part of his job as a fisherman since he was 11 years old. He and Chavez took turns navigating and running the panga, while the other person rested or took a break.

Luis believed that if they were not stopped and arrested, their next destination would have been to meet another boat, where the drugs would be transferred, and the original panga would be sunk. Their transportation back to Ecuador was going to be arranged but he was not given any details how it would be done. They would receive their pay upon returning to Ecuador.

After the U.S. Coast Guard boarded the ship, arrested the two defendants, and seized the drugs, they found a GPS tracker below the deck, that was presumably placed there by the smuggling organization to track their location.

C.   STATEMENT OF THE CASE

Marin and Chavez were arrested on March 18, 2022. They were held as prisoners on a Coast Guard vessel until brought to the Southern District of Florida on or about April 7, 2021. The government obtained the indictment in the Southern District of California on April 2, 2021. Both defendants were transported to the Southern District of California and arraigned on May 21, 2021.

The indictment alleged three counts:

Count 1: Conspiracy to Distribute Cocaine and Methamphetamine on Board a Vessel (46 U.S.C. §§ 70503 and 70506(b));

Count 2: Possession of Cocaine with Intent to Distribute on Board a Vessel, Aiding and Abetting (46 U.S.C. § 70503 and 18 U.S.C. § 2); and

Count 3: Possession of Mehtmphetamine with Intent to Distribute on Board a Vessel, Aiding and Abetting (46 U.S.C. § 70503 and 18 U.S.C. § 2).

The parties entered into a plea agreement wherein the defendants pled guilty to Counts 2 and 3 on November 3, 2021.[1]

D.  **DEFENSE REQUESTS A DOWNWARD VARIANCE TO 48-MONTHS CUSTODY**

Luis Marin requests the Court to grant him a downward variance to a sentence of 48 months imprisonment under 18 U.S.C. § 3553(a) and/or a combination of factors under U.S.S.G. § 5K2.0.

**The following 4-factors support such a downward variance, departure, or adjustment:**

1.  **No Prior Record and Motivated by Financial Desperation**

Luis Marin is a young man with no prior criminal record who got involved in this offense after initially believing he was going to be hired for a commercial fishing job on the Pacific Ocean. He was desperate for money to support himself and his extended family when their entire source of income had become severely

---

[1] The defendants will be sentenced on Count 2 with Counts 1 and 3 to be dismissed. Please see *Defendant's Sentencing Summary Chart, footnote 1*.

impacted by the Coronavirus Pandemic. Once he boarded the larger fishing vessel, his options were limited. He did not feel safe trying negotiate his way out of the transporting of drugs once it became clear that was what he was being was asked to do. He was also promised a large sum of money with which he could have taken care of his humble Ecuadoran family and get them brought the pandemic.

The Court may consider these facts in mitigation of an advisory guideline sentence.

**2.     Lack of Sophistication and Relative Role in the Offense**

Luis Marin only knows how to fish and operate a smaller size fishing vessel. He has no experience in drug trafficking and had no role in planning this offense. As described above, a highly sophisticated skill set was necessary to plan and coordinate this offense. Luis Marin was not such a person. He was at best a one-time co-pilot of the small vessel transporting the drugs.

There were other vessels involved in refueling and resupplying the two defendants. There were organizers, coordinators, and financially invested persons on both the Ecuadoran and Mexican ends of this venture. The relative culpability of Marin and Chavez fall well below that of these individuals.

While it is difficult to compare the relative roles of the many individuals it took to accomplish this high seas smuggling operation, the two defendants charged and convicted in this case were not experienced at it and were performing a specific task, as instructed by others, when arrested. Therefore, they should qualify for a mitigated sentence based on their relative role in the offense, even if the Court does not find they meet the legal standards for a downward adjustment for minor role and the base offense level under the Sentencing Guidelines. U.S.S.G. §§ 2D1.1(a)(5), 3B1.2.

### 3. Impact of the Coronavirus Pandemic and Expeditious Resolution

Luis Marin had not previously been involved in transporting drugs. No doubt such opportunities have arisen. However, he has alway made his living, honestly, as a fisherman. It took the economic devastation that the Coronavirus Pandemic had on his fishing village and the circumstances of this commercial fishing venture to push him over the edge.

Luis Marin has been in custody for almost an entire year, all of which took place during the Coronavirus Pandemic. As a result, he has suffered through numerous quarantines and related delays in his case, all while fearing an unknown life-threatening illness. Court appearances became virtual and attorney client

conferences many times became limited to calls and involved conversations at a distance through protective plastic dividers while wearing face masks.

Luis accepted the offer made by the government, only filing a discovery motion, and not litigating the case in any manner. He has waived his right to appeal a sentence below the unspecified guideline range recommended by the Government.

The plea agreement does not include any variance or downward departure related to these issues. However, the Court is free to consider these facts under § 3553(a).

**4.     Avoiding Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct.**

The Court is encouraged to look to other similar cases to determine whether the recommendations of the Government (84 months) and U.S. Probation (60 months) fulfill the statutory mandate that the sentence imposed satisfies "*the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct*." 18 U.S.C § 3553(a)(6).

Mr. Marin requests the Court to evaluate the potential sentence in the context of the following two types of cases.

First, the typical border bust when the driver and passenger are first time offenders with little knowledge or control over the amount and type of drug being smuggled. The Court sentences many individuals who fall into this category, including those who are convicted of importing far than the 4.5 kilograms of methamphetamine necessary to reach a Base Offense Level of 38 (plus 2 levels for importing methamphetamine) before considering adjustments and departures specific offense and offender characteristics.[2]

Second, other similar go-fast vessel cases. In particular, the Government has agreed to make a lower 72-month recommendation in *USA v. Amaral Meza et al*, 21CR00292-GPC for all 10 defendants who are charged with the same offenses for which Mr. Marin is being sentenced. That case also involved a go-fast vessel and 1836 kg of cocaine. Moreover, 4 of those defendants were sufficiently resourceful or valued enough by their organization to retain counsel.

The defense contends that the 48-month custodial sentence recommended by Luis Marin, is reasonable by comparison to the two types of cases discussed above and satisfies the need to avoid unwarranted sentence disparities among

---

[2] In this case, the Base Offense Level is 38, because the 1000 kg of cocaine is more than 450 kg.

defendants with similar records who have been found guilty of similar conduct."
18 U.S.C § 3553(a)(6).

E. **CONCLUSION**

An 48-month custodial sentence is a term that is sufficient, but not greater than necessary, to satisfy the statutory purposes of sentencing set forth in 18 U.S.C. § 3553(a) and also satisfies the policy of avoiding unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6).

                                              Respectfully submitted,

Dated: February 11, 2022                   *s/Kenneth J. Troiano*
                                                        Kenneth J. Troiano
                                                         Attorney for Defendant
                                                         Luis Marin